OPINION
{¶ 1} Plaintiff-appellant Christy M. Lanfranc appeals from the January 18, 2005, final decree of divorce entered by the Licking County Court of Common Pleas. Defendant-appellee is Ryan M. Lanfranc.
 STATEMENT OF THE FACTS AND CASE {¶ 2} The parties were married on February 19, 1994. Three children were born as issue of the marriage: Michael Lanfranc, dob 8/17/94; Annie Lanfranc, dob 5/13/97; and Olivia Lanfranc, dob 4/2/01.
 {¶ 3} Appellant filed a complaint for divorce on September 25, 2003. In the complaint, appellant alleged incompatibility and that appellee had been "guilty of duty [sic] and extreme cruelty." On October 23, 2003, appellee filed a counterclaim. In the counterclaim, appellee alleged incompatibility, gross neglect of duty and adultery. On December 8, 2003, a Magistrate issued an ex parte Magistrate's Order in which appellant was awarded temporary custody of the three minor children.
 {¶ 4} A final hearing was held on October 4, 2004. By Judgment Entry filed January 18, 2005, appellant was granted a divorce due to incompatibility. Appellee was granted a divorce on his counterclaim on the grounds of adultery and incompatibility. The trial court designated appellee as the residential parent and awarded appellant parenting time. Appellant was ordered to pay child support and appellee was ordered to pay spousal support. The marital property was divided.
 {¶ 5} It is from the January 18, 2005, final decree of divorce that appellant appeals, raising the following assignments of error:
 {¶ 6} "I. THE TRIAL COURT'S ORDER DESIGNATING APPELLEE AS RESIDENTIAL PARENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, CONTRARY TO LAW, AND AN ABUSE OF DISCRETION.
 {¶ 7} "II. APPELLEE WAS PRECLUDED BY THE PRINCIPLES OF ESTOPPEL AND WAIVER FROM ARGUING THAT APPELLANT'S ALLEGED IMMORAL CONDUCT HAD A DIRECT AND ADVERSE IMPACT ON THE CHILDREN.
 {¶ 8} "III. THE TRIAL COURT'S DECISION THAT FOUND APPELLANT `HAS EXPERIENCED FRAGILE EMOTIONAL AND MENTAL HEALTH,' THAT FOUND APPELLEE `THE PARENT MORE LIKELY TO FACILITATE VISITATION,' AND THAT FOUND APPELLANT HAD `INTERFERED WITH [APPELLEE'S] PARENTING TIME' WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 I, III {¶ 9} Appellant's first and third assignments of error will be considered together. In the first assignment of error, appellant contends that the trial court's designation of appellee as the residential parent was against the manifest weight of the evidence, contrary to law and an abuse of discretion. Specifically, appellant argues that the trial court designated appellee as the residential parent based upon appellant's alleged immoral conduct despite a lack of evidence that this alleged behavior had a direct adverse impact on the children. In the third assignment of error, appellant argues that the trial court's findings that appellant "has experienced fragile emotional and mental health," that appellee was the "parent more likely to facilitate visitation" and that appellant had "interfered with [appellee's] parenting time" were against the manifest weight of the evidence.
 {¶ 10} The standard of review for issues challenging a designation of a residential parent is abuse of discretion. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,450 N.E.2d 1140. We must look at the totality of the circumstances in the case sub judice and determine whether the trial court acted unreasonably, arbitrarily or unconscionably.
 {¶ 11} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. State v. Martin (1983),20 Ohio App.3d 172, 485 N.E.2d 717.
 {¶ 12} Under R.C. 3109.04, the standard to be applied in choosing a residential parent is the best interest of the children. Revised Code 3109.04 states as follows:
 {¶ 13} "In determining the best interest of a child, . . . the court shall consider all relevant factors, including, but not limited to: (a) The wishes of the child's parents regarding the child's care; (b) If the court has interviewed the child in chambers . . . regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court; (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; (d) The child's adjustment to the child's home, school, and community; (e) The mental and physical health of all persons involved in the situation; (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights; (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor; (h) Whether either parent previously has been convicted of or pleaded guilty to [certain criminal offenses involving children, family members or household members]; (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court; (j) Whether either parent has established a residence, or is planning to establish a residence, outside this state." R.C. 3109.04(F)(1).
 {¶ 14} However, in determining custody issues, a court may not punish a parent for conduct considered immoral without other factors affecting the best interests of the child. Whaley v. Whaley (1978),61 Ohio App.2d 111, 399 N.E.2d 1270.
 {¶ 15} In this case, the trial court designated appellee as the residential parent pursuant to the following findings:
 {¶ 16} "It is in the children's best interest to designate the [appellee] as the residential parent. Both parents [are] loving and nurturing but the [appellee] has the ability to provide the stability and home the children need for their personal and social growth. Further the [appellant] has engaged in a pattern of reckless behavior that has a direct and negative impact on the children. The [appellant] was charged with a DUI on May 29, 2003, and has mixed alcohol with antidepressants. She has had intimate encounters with adult males in public places and has caused the children to experience anxiety. The [appellee's] extended family has frequently cared for the children. The [appellant] has experienced fragile emotional and mental heath [sic], the [appellee] is the parent more likely to facilitate visitation; and the [appellant] has interfered with the [appellee's] parenting time." January 18, 2005, Judgment Entry, pg. 2 [footnotes omitted].
 {¶ 17} Obviously, the trial court recognized that both appellant and appellee were loving and nurturing parents. However, the trial court was faced with having to choose which party to designate as the residential parent. A review of the record demonstrates that the record contains evidence that appellant engaged in reckless behavior. This behavior included consumption of alcohol in bars. There was testimony that appellant became a different person when she consumed alcohol, becoming "looser," meaning she became "more apt to do things maybe than a person non-drinking would do." Transcript of Proceedings, pg. 113. Specifically, there was testimony that more than once appellant had sexual encounters with men she met at the bar, she was convicted of a DUI, and, in the past, mixed alcohol with an antidepressant. There was also testimony that appellant had previously taken medication for panic attacks and more recently, had been found by appellee "curled up in a ball, . . . crying, apologizing, going crazy," allegedly because of something she had done. Tr. at pgs. 47 and 71.
 {¶ 18} There was also testimony that when appellee attempted to talk to the children on the phone when they were with appellant, there was interference by appellant. This interference included very loud background noises, distractions by appellant and talking by appellant, thereby making it nearly impossible for appellee to talk to the children.
 {¶ 19} Further, the trial court was in a position to judge matters of credibility, attitude and demeanor. From all of this evidence and observation, the trial court had to make judgments as to who should be named the residential parent.
 {¶ 20} Appellant approaches this issue in terms of morality, arguing that the trial court had no evidence that appellant's alleged immoral behavior directly and adversely affected the children. In addition, appellant cites this court to evidence which she asserts reflected poorly on appellee's morality but was overlooked by the trial court.
 {¶ 21} However, the trial court does not phrase its findings in terms of morality necessarily. The trial court had a difficult decision to make and had to make the decision that it thought would be in the children's best interest. We see no error nor abuse of discretion in considering the evidence that showed appellant engaged in reckless or dangerous behavior. See R.C. 3109.04. We agree with appellant that there was not strong evidence to connect these behaviors to direct adverse impacts on the children. However, under the totality of the circumstances, we cannot say that the trial court abused its discretion.
 {¶ 22} Further, we find that the findings that "appellant has experienced fragile emotional and mental health," that appellee was "the parent more likely to facilitate visitation" and that appellant had "interfered with [appellee's] parenting time" were not against the manifest weight of the evidence.
 {¶ 23} Appellant's first and third assignments of error are overruled.
 II {¶ 24} In appellant's second assignment of error, appellant contends that appellee was precluded by the principles of estoppel and waiver from arguing that appellant's alleged immoral conduct had a direct adverse impact on the children. Appellant argues that appellee was required to raise the issue of whether her alleged immoral conduct had a direct adverse impact on the children prior to the Magistrate's Decision granting temporary custody of the children to appellant, or, at least, prior to the final hearing. We disagree.
 {¶ 25} In this case, appellant was initially named the residential parent through an ex parte Temporary Order. Appellee did not move the court to change that Temporary Order and have himself named the residential parent prior to the final hearing nor did appellee raise the issue of appellant's alleged immoral conduct through any means prior to the final hearing. However, appellant cites to no authority to support her argument that the doctrines of waiver and estoppel apply in this situation. Further, this court is not aware of any requirement that a party raise the issue of a party's alleged immoral conduct and its potential impact on children prior to the final hearing in order to preserve the right to present such evidence at the hearing. Upon consideration, we find that to make such a requirement would be contrary to the trial court's mandate to determine custody issues in terms of the children's best interests. See R.C. 3109.04(B)(1).
 {¶ 26} Accordingly, appellant's second assignment of error is overruled.
 {¶ 27} The judgment of the Licking County Court of Common Pleas is affirmed.
Edwards, J. Gwin, P.J. and Hoffman, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Licking County Court of Common Pleas is affirmed. Costs assessed to appellant.